Rebecca L. Davis (State Bar No. 271662)
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Email: rebecca@lozeaudrury.com

*Attorneys for Plaintiff California Sportfishing Protection Alliance*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| California Sportfishing Protection Alliance, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>Santini Foods, Inc., a California corporation,<br><br>Defendant. | Case No. 4:26-cv-00097-HSG<br><br>**STIPULATION REQUESTING DISMISSAL OF PLAINTIFF'S CLAIMS; ORDER GRANTING DISMISSAL [FRCP 41(A)(2)]** (as modified)<br>Courtroom: 2<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Complaint Filed: 01/06/2026 |

## **STIPULATION**

WHEREAS, on October 9, 2025, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant Santini Foods, Inc. ("Santini") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365;

WHEREAS, based on the allegations in CSPA's Notice, on January 6, 2026, CSPA filed its Complaint [Dkt. 1] against Santini in this Court, *California Sportfishing Protection Alliance v. Santini Foods, Inc.*, Case No. 4:26-cv-00097-HSG;

WHEREAS, CSPA and Santini, through their authorized representatives and without either adjudication of CSPA's claims or admission by Santini of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Settlement Agreement ("Settlement Agreement") [Dkt. 23] entered into by and between CSPA and Santini is attached hereto as **Exhibit A** and incorporated by reference;

WHEREAS, CSPA submitted the Settlement Agreement via e-mail and certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice ("DOJ"), and the 45-day review period set forth at 40 C.F.R. § 135.5 has completed.  The Federal Agencies lodged no objection to the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to that CSPA and Santini request an order from this Court: (1) dismissing with prejudice CSPA's claims against Santini, as set forth in the Notice and Complaint, and (2) concurrently retaining jurisdiction over this matter for purposes of dispute resolution and enforcement of the Settlement Agreement, in accordance with Section III, ¶ 5.B and Section VIII, ¶¶ 24 and 25 of the Settlement Agreement.

STIPULATION REQUESTING
DISMISSAL; ORDER                                    -2-                              4:26-CV-00097-HSG

Dated: July 13, 2026                 LOZEAU DRURY LLP


                                     /s/ Rebecca L. Davis
                                     Rebecca L. Davis, Bar No, 271662
                                     1939 Harrison St., Suite 150
                                     Oakland, CA 94612
                                     Telephone: (510) 836-4200

                                     *Attorneys for Plaintiff*
                                     *California Sportfishing Protection Alliance*


Dated: July 13, 2026                 STOEL RIVES LLP


                                     /s/Nicole Granquist (authorized 7/13/26)
                                     Nicole E. Granquist, Bar No. 199017
                                     500 Capitol Mall, Suite 1600
                                     Sacramento, CA 95814
                                     Telephone: (916) 447-0700

                                     *Attorneys for Defendant*
                                     *Santini Foods, Inc.*

## ORDER

On October 9, 2025, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant Santini Foods, Inc. ("Santini") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365. Based on the allegations in CSPA's Notice, on January 6, 2026, CSPA filed its Complaint against Santini in this Court, *California Sportfishing Protection Alliance v. Santini Foods, Inc.*, Case No. 4:26-cv-00097-HSG. The Parties have fully resolved the allegations of Plaintiff's Complaint by entering into a Settlement Agreement, a copy of which is attached hereto as **Exhibit A** and incorporated by reference.

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that the Complaint, and all of Plaintiff CSPA's claims against Defendant Santini as set forth in the Notice and in the Complaint, are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties and this matter, for purses of dispute resolution and enforcement of the Settlement Agreement.

IT IS SO ORDERED.  The Clerk is directed to close this case.

DATED:      7/14/2026

Judge Haywood S. Gilliam, Jr.
United States District Judge

STIPULATION REQUESTING
DISMISSAL; ORDER                                    -4-                        4:26-CV-00097-HSG

Rebecca L. Davis (State Bar No. 271662)
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Phone: (510) 836-4200
Email: rebecca@lozeaudrury.com

Attorneys for Plaintiff
California Sportfishing Protection Alliance

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

California Sportfishing Protection Alliance, a non-profit corporation,

           Plaintiff,

      v.

Santini Foods, Inc., a Texas corporation,

           Defendant.

Case No.: 3:26-cv-00097-HSG

SETTLEMENT AGREEMENT

(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)

Honorable Judge Haywood S. Gilliam

## SETTLEMENT AGREEMENT

The following Settlement Agreement ("Agreement") is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendant Santini Foods, Inc., ("Santini" or "Defendant"). The entities entering this Agreement are each an individual "Settling Party" and collectively "Settling Parties."

WHEREAS, CSPA is a 501(c)(3) non-profit, public benefit corporation duly organized and existing under the laws of the State of California, dedicated to the protecting California surface waters from pollution and degradation, among other objectives.

WHEREAS, Defendant Santini owns and operates an industrial facility at 16505 Worthley Drive, San Lorenzo, CA 94580 ("Facility").

WHEREAS, the industrial activities at the Facility consist primarily of the processing and canning of sweetened condensed milk products intended for use in baking applications; processing and bottling of

SETTLEMENT AGREEMENT                   1                   3:26-cv-00097-HSG
152934834.1 0071181-00001

syrups for coffee, ice cream, and confectionary; and the bottling of bulk cooking oils for retail and food service customers.

WHEREAS, the Facility is currently categorized under Standard Industrial Classification ("SIC") Code 2023—establishments primarily engaged in manufacturing dry, condensed, and evaporated dairy products (Dry, Condensed, and Evaporated Dairy Products).

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ (hereinafter "General Permit" or "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. § 1342.

WHEREAS, on or around October 9, 2025, CSPA served Santini, the Administrator of the U.S. Environmental Protection Agency (EPA), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the General Permit at the Facility;

WHEREAS, on January 6, 2026, CSPA filed a complaint against Defendant in the United States District Court, Northern District of California, Civil Case No. 3:26-cv-00097-HSG ("Complaint");

WHEREAS, CSPA's Complaint alleges Defendant is in violation of the substantive and procedural requirements of the General Permit and the Clean Water Act;

WHEREAS, Defendant denies all allegations and claims contained in the 60-Day Notice and the Complaint and reserves all rights and defenses with respect to such allegations and claims; and

WHEREAS, the Settling Parties, through their authorized representatives and without either adjudication of CSPA's claims or admission by Santini of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full CSPA's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of litigation;

SETTLEMENT AGREEMENT                2                3:26-cv-00097-HSG
152934834.1 0071181-00001

**NOW THEREFORE IT IS HEREBY AGREED BETWEEN THE SETTLING PARTIES, AS FOLLOWS:**

### I.    OBJECTIVES

1.    It is the express purpose of the Settling Parties to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and to resolve those issues alleged by CSPA in its 60-Day Notice and Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Agreement and to comply with the General Permit and all applicable provisions of the Clean Water Act.

### II.    TERM OF AGREEMENT

2.    **Effective Date.** The Effective Date of this Agreement shall be the day the District Court enters an order granting the Parties' stipulation to dismiss Plaintiff's claims with prejudice described in Paragraph 5 of this Agreement.

3.    **Term of Agreement.** This Agreement shall continue in effect until the latest of:

i.    August 30, 2028;

ii.    Seven (7) days from the conclusion of any proceeding or process to enforce the Agreement initiated pursuant to the Dispute Resolution procedure in accordance with Paragraph 23 prior to June 30, 2028; or

iii.    Seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Agreement.

### III.    COMMITMENTS OF CSPA

4.    **Submission of Agreement to Federal Agencies.** Within five (5) business days of the mutual execution of this Agreement, CSPA shall do the following:

A.    Submit this Agreement to the United States Department of Justice ("DOJ") for the statutory forty-five (45) day agency review period set forth in 33 U.S.C. § 1365(c). The agency review period expires forty-five (45) calendar days after receipt by DOJ. In the event that the DOJ objects to this Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ within thirty (30) calendar days.

B. Submit a Notice of Settlement to the District Court mutually agreed to by the Settling Parties.

5. **Case Dismissal.** Within ten (10) calendar days of the expiration of the agencies' review period specified in Paragraph 4 above, CSPA shall file with the District Court a Stipulation to Dismiss with Prejudice and [Proposed] Order, signed by both Parties, providing that:

A. The Complaint and all claims against Santini shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) (the date of entry of the Order to dismiss shall be referred to herein as the "Court Approval Date"); and

B. The District Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Agreement, which shall be attached to the Stipulation and fully incorporated by reference, through the Termination Date. Nothing in this Agreement shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Agreement.

### IV.     BEST MANAGEMENT PRACTICES

6. In order to further reduce or prevent pollutants associated with industrial activity from becoming entrained in stormwater , Defendant shall implement additional appropriate structural and non-structural Best Management Practices ("BMPs") to, at a minimum, comply with the requirements of the General Permit.

7. **Implementation of BMPs.** Within thirty (30) calendar days of the Effective Date of this Agreement, Defendant shall implement, or already have implemented, the following BMPs at the Facility:

A. Remove trash and debris daily;

B. Seal, cover, and/or elevate chemical containers when they are stored outside;

C. Implement proper storage and handling procedures for chemicals and secondary containment to prevent and address spills;

D. Regularly clean equipment and tanks using appropriate cleaning agents to minimize organic residue build-up;

SETTLEMENT AGREEMENT                4                3:26-cv-00097-HSG
152934834.1 0071181-00001

E. Employ membrane filters that remove smaller particles and organic matter, such as ENPAC Model 4341-IB or PIG INT 400-1059 model with activated carbon and PET for finer filtration at each storm drain inlet to remove TSS and COD in storm water discharged from the Facility. Filters shall include sampling ports that are accessible during storm events for post-treatment water quality and compliance monitoring;

F. Replace filters as necessary when degraded or ineffective, including without limitation when there are rips, tears, or other visual damage, and/or sampling data demonstrating the filters and/or wattles are not sufficiently reducing pollutant concentrations;

G. Patch areas of degraded asphalt as needed throughout the Facility;

H. Deep clean asphalt throughout the Facility using a power washer, collecting and disposing of the waste water without discharging to storm drains;

I. Purchase a Karhdir model PHR 1280 Regenerative Sweeper and use the sweeper on all paved areas at least once per day, five days per week, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access; and

J. Maintain a sweeping log;

K. Annually clean and maintain all gutters free of debris and holes, ensuring stormwater flows freely and does not overflow, spill, or leak onto the and facade of the Facility or equipment.

8. **Employee Training.** Within sixty (60) days of the Effective Date, Defendant shall develop and implement, or hire a third party consultant to implement, an employee training program that meets the following requirements and ensures (1) that there are a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Agreement ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Agreement ("Training Program"):

SETTLEMENT AGREEMENT                                  5                                  3:26-cv-00097-HSG
152934834.1 0071181-00001

A. Materials. Training materials should include the Site Map and an explanation of the Stormwater Pollution Prevention Plan ("SWPPP") for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

B. Language. Defendant shall conduct the Training Program in the language or languages in which all employees participating are expected to speak at the Facility while performing their duties;

C. Stormwater Sampling Training. Defendant shall designate an adequate number of employees or third party consultants necessary to collect stormwater samples as required by this Agreement, including training to ensure stormwater samples are properly collected, stored, and submitted to a certified laboratory;

D. Visual Observation Training. Defendant shall provide training to Designated Employees on how and when to properly conduct visual observations at the Facility;

E. Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

F. Training Frequency. Training shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Agreement, the Permit, and the Facility's SWPPP. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

G. Trainer. The Training Program shall be provided by a QISP who is familiar with the requirements of this Agreement and the General Permit;

H. Records. Defendant shall maintain training records to document compliance with this section, and shall provide CSPA with a copy of these records within fourteen (14) calendar days of receipt of a written request.

SETTLEMENT AGREEMENT                 6                 3:26-cv-00097-HSG

I.    <u>SWPPP Update</u>. If, and when appropriate, Defendant shall integrate any new training requirements resulting from this Agreement into the Facility SWPPP. Defendant shall also revise the Facility SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

## V.     SAMPLING, MONITORING, INSPECTION & REPORTING

9. **Rain Gauge.** Within thirty (30) days of the Effective Date, Defendant shall install a recording rain gauge capable of continuously recording rainfall at the Facility with a resolution of no less than 0.01 inches. Defendant shall maintain the rain gauge in accordance with manufacturers' recommendations, maintain records of all maintenance, and provide maintenance records within fourteen (14) calendar days of a request by CSPA.

10. **Amendment of SWPPP.** If not already completed, within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP to the extent necessary to incorporate all changes, improvements, and best management practices set forth in or resulting from this Agreement. Defendant shall ensure that all maps, tables, and text comply with the requirements of the Permit. A copy of the amended SWPPP shall be provided to CSPA within ten (10) business days of completion.

11. **Sample Result Reporting**. After the Effective Date, Defendant shall provide complete results from sampling and analysis to CSPA and the State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System ("SMARTS") within thirty (30) calendar days of receipt of the laboratory report from each sampling event.

12. **End-of-Year Summary.** By July 15 following each Reporting Year that occurs during the term of this Agreement, Defendant shall prepare and send to CSPA an End-of-Year Summary that includes: (1) a summary chart with all of the sample results from the previous Reporting Year including the constituent concentration(s) from sample(s) collected at the Facility exceeding the Target Levels in Table 1 ("Exceedance(s)"); and (2) identification of any new BMP(s) that Defendant has implemented or will implement not already discussed in a prior End-of-Year Summary or Action Plan for the immediately previous Reporting Year.

SETTLEMENT AGREEMENT        7        3:26-cv-00097-HSG
152934834.1 0071181-00001

**Table 1. Target Levels.**

| Water Quality Parameter | Target Level |
|---|---|
| Oil and grease | 15 mg/L (annual average) |
| COD | 120 mg/L (annual average) |
| Total Suspended Solids | 100 mg/L (annual average) |
| pH | Greater than 6 s.u., Less than 9 s.u. (instantaneous maximum) |

13. **Action Plan.** If Defendant's sample result demonstrates Exceedance(s) of any Target Levels at the Facility, Defendant shall submit an Action Plan in addition to an End-of-Year Summary to CSPA by July 15. For annual average Target Levels, Exceedance shall be established when the average of all analytical results from all samples taken at the Facility during a Reporting Year for a given water quality parameter exceeds the annual average Target Level listed in Table 1. For instantaneous maximum Target Levels, Exceedance shall be established when two or more analytical results from samples taken for any water quality parameter within a Reporting Year exceed the instantaneous maximum Target Level listed in Table 1. For the purposes of this Agreement, the Reporting Year is July 1 through June 30.

14. **Contents of Action Plan.** If an Action Plan is required, it shall include the following:

A. The possible sources of the Exceedance(s) during the applicable Reporting Year;

B. A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Action Levels in Table 1.

C. Data, drawings, and other design rationale demonstrating that the proposed site-specific BMPs should prevent Exceedance(s) from occurring in the future; and

D. A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Reporting Year. In any Action Plan, Defendant shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

E. If the average of the sampling results for the 2026-2027 Reporting Year exceed the Target Level for TSS or COD listed in Table 1, then as part of the Action Plan

process, the Parties shall meet and confer regarding the feasibility and appropriateness of Defendant repaving, in part or in full, industrial areas of the Facility as an additional BMP. To support those discussions, the Action Plan shall include bids obtained by Defendant from a minimum of two vendors demonstrating the cost of repaving those industrial areas of the Facility. This provision does not bind Defendant to undertake repaving of industrial areas of the Facility.

15. **CSPA Review of Action Plan.** CSPA shall have thirty (30) days from receipt to propose revisions to the Action Plan. However, if CSPA notifies Defendant within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, CSPA shall have an additional fifteen (15) days to propose revisions to the Action Plan. Defendant will consider in good faith within thirty (30) days of receipt of CSPA's proposed revisions and either incorporate those revisions or explain via writing or telephone why those revisions were not accepted. If any disputes as to the adequacy of the revisions remain, the Parties shall meet and confer in accordance with Paragraph 23.

16. Implementation of Action Plan.

    A.    Defendant shall implement the Action Plan(s) adopted pursuant to this Agreement as an obligation of this Agreement.

    B.    Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Agreement are implemented, Defendant shall revise the Facility SWPPP and Site Map to include all BMP revisions or additions intended to reduce Exceedance(s) in stormwater and not otherwise already implemented and included in the Facility SWPPP or Site Map and shall provide CSPA with a copy of such revised SWPPP.

    C.    Within fourteen (14) days of each BMP being implemented, Defendant shall confirm to Plaintiff in writing, with photographs where relevant, that such BMP has been implemented.

D.      Preparation and implementation of an Action Plan by Defendant will not give rise to any presumption that Defendant has failed to comply with any obligations under the General Permit or the Clean Water Act.

17. During each Reporting Year, Defendant has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Agreement, and, if the Target Levels are exceeded, make attempts to reduce the concentrations to Target Levels for the remainder of the Reporting Year. Defendant shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

18. **Site Access**. During the Term of this Agreement, Defendant shall permit representatives of CSPA to perform up to one (1) physical inspection per year of the Facility during operating hours ("Site Inspection"). The site inspection will only be conducted in those areas of the Facility subject to the General Permit. CSPA shall provide Defendant's counsel at least ten (10) calendar days' notice in advance of such Site Inspection during normal work hours, which shall occur on a date mutually agreed upon by the Parties. Such an inspection shall not interfere with any operations or industrial activities. CSPA shall comply with all safety instructions provided to CSPA by Defendant's staff during all Site Inspections. During Site Inspections, CSPA shall be allowed to inspect and sample any stormwater discharges or receiving waters, inspect any logs, and take photos and/or videos. Any water quality sampling shall be with a split sample provided to both Parties at the time of sampling. CSPA shall provide Defendant with a copy of all sampling reports, photographs, and/or video within a reasonable time after the site inspection, not to exceed fourteen (14) calendar days after CSPA's receipt of any sampling reports from split samples, and seven (7) calendar days after the site inspection for photographs and/or video.

19. **Reports.** During the Term of this Agreement, Defendant shall provide CSPA with a copy of all non-privileged documents submitted to the Regional Water Board, the State Water Board, or any other government agency concerning the Facility's compliance with the General Permit. Such documents and reports shall be transmitted to CSPA via electronic mail at the time the documents are submitted to the government agency.

## VI.      MITIGATION, FEES AND COSTS

20. **Environmentally Beneficial Project**. To fund environmentally beneficial project activities

SETTLEMENT AGREEMENT                    10                    3:26-cv-00097-HSG
152934834.1 0071181-00001

that will reduce or mitigate impacts of storm water pollution from industrial activities occurring in San Lorenzo Creek watershed, Defendant shall make a payment totaling Thirty-Five Thousand dollars ($35,000.00) to Friends of San Lorenzo Creek, a 501(c)(3) nonprofit corporation, trust, or association, to support water quality and habitat enhancement projects within Bockman Canal and the broader San Lorenzo Creek watershed including activities such as debris removal, native plant restoration, and/or other ecological improvements that benefit these waterways. Payment shall be sent to the Friends of San Lorenzo Creek via overnight mail to as follows: Friends of San Lorenzo Creek, 3127 Terry Court, Castro Valley, California 94546. Defendant shall copy CSPA with any correspondence and a copy of the check sent to the Friends of San Lorenzo Creek.

21. **Reimbursement of Fees and Costs**. Within thirty (30) days of the Effective Date, Defendant shall reimburse CSPA in the amount of Thirty-Four thousand dollars ($34,000.00) to defray CSPA's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating and filing the lawsuit, bringing these matters to Defendant's attention, and negotiating a resolution of this action. The payment shall be made payable to Lozeau Drury LLP and sent via overnight mail to: Lozeau Drury LLP, Attn: Rebecca Davis, 1939 Harrison St., Suite 150, Oakland, CA 94612. Payment will constitute full satisfaction of all costs of litigation incurred by CSPA that have or could have been claimed in connection with or arising out of the Notice Letter and Complaint, up to and including the Effective Date.

22. **Compliance Oversight Costs**. As reimbursement for CSPA's future fees and costs that will be incurred in order for CSPA to monitor Defendant's compliance with this Agreement and to effectively meet and confer and evaluate monitoring results for the Facility, Defendant agrees to reimburse CSPA for its reasonable fees and costs incurred in overseeing the implementation of this Agreement up to but not exceeding two thousand five hundred dollars ($2,500.00) for each of the two reporting years. Fees and costs reimbursable pursuant to this paragraph may include, but are not limited to, those incurred by CSPA or its counsel to conduct site inspections, review water quality sampling reports, review annual reports, discussion with representatives of Defendant concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. By September 1, 2027 and September 1, 2028, CSPA shall provide an invoice containing an

SETTLEMENT AGREEMENT 11 3:26-cv-00097-HSG
152934834.1 0071181-00001

itemized description for any fees and costs claimed for the up to two annual payments (one addressing any oversight associated with the 2026-2027 reporting year and one addressing oversight associated with the 2027-2028 reporting year). Payment shall be made payable to "Lozeau Drury LLP," Attn: Rebecca Davis, 1939 Harrison St., Suite 150, Oakland, CA 94612, within thirty (30) days of receipt of an invoice from CSPA that contains an itemized description of fees and costs incurred by CSPA to monitor implementation of the Agreement during and subsequent to the previous reporting year.

## VII.    DISPUTE RESOLUTION AND STIPULATED PAYMENTS

23. **Dispute Resolution.** If a dispute under this Agreement arises or the Settling Parties believe that a breach of this Agreement has occurred, they shall follow the following procedure:

A.    The Settling Parties shall schedule a meet and confer within twenty-one (21) business days of receiving written notification from the other Settling Party of a request for a meeting to determine whether a violation of this Agreement has occurred and to develop a mutually-agreeable plan, including implementation dates, to resolve the dispute.

B.    If the Settling Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least ten (10) business days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Agreement.

C.    The Parties shall be entitled to seek reasonable fees and costs incurred in any such action to enforce the terms of this Agreement pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## VIII.    JURISDICTION OVER SETTLING PARTIES AND SUBJECT MATTER OF AGREEMENT

24.    **Jurisdiction.** For the purposes of this Agreement, the Settling Parties stipulate that the United States District Court of California, Northern District of California, ("District Court") has

SETTLEMENT AGREEMENT                    12                    3:26-cv-00097-HSG
152934834.1 0071181-00001

jurisdiction over the Settling Parties and subject matter of this Agreement. The Settling Parties stipulate that venue is appropriate in the Northern District of California and that CSPA has standing to bring any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

25.   **Jurisdiction to Enforce Agreement.**  The District Court shall retain jurisdiction over the Settling Parties and subject matter of this Agreement for the purpose of adjudicating all disputes among the Settling Parties that may arise under the provisions of this Agreement. The Court shall have the power to enforce this Agreement with all available legal and equitable remedies.

## IX.      WAIVER, COVENANT NOT TO SUE AND RELEASES

26.   The covenants set forth in this Section IX shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or operation of law.

27.   **CSPA Waiver and Release of Noticed Parties**. CSPA, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Defendant, its past and present officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims, raised, or which could have been raised, in the 60-Day Notice and Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed, up to and including the Term of this Agreement except claims associated with the dispute resolution process set forth in Section VII of this Agreement.  The release provided for herein shall be valid and effective whether the claims, causes of action, or liability hereby released (i) were known or unknown, suspected, or unsuspected; (ii) were based in contract, tort, statute, or otherwise; or (iii) arise at law or in equity.  This release shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or operation of law.

28.   CSPA expressly waives for all purposes the provisions of Section 1542 of the California Civil Code, which provides as follows:

> *A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.*

*(Emphasis added.)*

29.   **CSPA Covenant Not to Sue or Assist.** During the term of this Agreement, CSPA agrees that neither CSPA or its officers, executive staff, members of its governing board, employees, nor any organization under the control of CSPA or its officers, executive staff, employees, or members of its governing board, will serve any 60-day Notices of Violation and Intent to Sue or file any lawsuit against Defendant seeking relief for any alleged violation of the Clean Water Act or the General Permit, or any revisions thereto, or similar federal and state statutes and/or regulations, at the Facility. During the term of this Agreement, CSPA will not initiate, encourage, support, facilitate, participate in, or cooperate with such notice letters or lawsuits against Defendant brought by other groups or individuals, unless otherwise required by court order or valid subpoena. During the Term of this Agreement, Plaintiff agrees the exclusive procedure to resolve any claims against Defendant seeking relief for alleged violations of the federal Clean Water Act or comparable provisions of state law related to industrial storm water, including the federal Clean Water Act, is the dispute resolution process set forth in Section VII of this Agreement.

30.   **Defendant's Waiver and Release of CSPA.** Defendant, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release CSPA and its past and present officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of its successors or assigns, agents, attorneys, and other representatives from, and waive all claims which arise from, or could arise from or pertain to, the 60-Day Notice and Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, up to and including the Term of this Agreement except claims associated with the dispute resolution process set forth in Section VII of this Agreement. The release provided for herein shall be valid and effective whether the claims, causes of action, or liability hereby released (i) were known or unknown, suspected, or unsuspected; (ii) were based in contract, tort, statute, or otherwise; or (iii) arise at law or in equity. This release shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or operation of law.

## X.   CONFIDENTIALITY

31.    The following items are defined as "Confidential Information" under this Agreement: commercially valuable, non-public data, including trade secrets, technical designs, financial data, and strategic plans, and which may include non-public data, samples, reports, communications, observations, photographs, maps, schematics, and analysis related to stormwater and/or wastewater associated with industrial activities at the Facility, that is marked as "Trade Secrets or Confidential Business Information (CBI)."

32.    The Settling Parties agree and covenant that Confidential Information shall be kept confidential and shall not be disclosed to any person or firm except as may be required by law; provided, however, that any Settling Party may disclose the Confidential Information: (i) in response to any valid subpoena, discovery demand, or court order issued in an action pending in a court of competent jurisdiction, which may hereafter be served by a third party upon a Settling Party to this Agreement and which requires the disclosure of the Confidential Information under penalty of sanctions for non-compliance therewith; (ii) pursuant to the Settling Parties' obligations under any public disclosure or reporting law; (iii) to accountants and taxing authorities, as necessary; or (iv) with the prior written consent of the other Settling Parties.  In the event any Settling Party to this Agreement may be served with a valid subpoena, discovery demand, or court order, the Settling Party so served shall immediately notify all other Settling Parties to this Agreement, to whom shall be given the opportunity to intervene or to otherwise set forth their opposition prior to the disclosure of the Confidential Information.

## XI.   MISCELLANEOUS PROVISIONS

33.    **No Admission of Liability.** The Settling Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation.  Neither the Agreement nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

34.    **Early Termination.** If Defendant should cease or modify industrial operations at the Facility and file a Notice of Termination ("NOT") or other notification under the General Permit prior to

SETTLEMENT AGREEMENT                    15                         3:26-cv-00097-HSG
152934834.1 0071181-00001

the Termination Date of this Agreement, Defendant shall send CSPA a copy of the proposed NOT or notice on the same day as its submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT or other modification, Defendant shall notify CSPA in writing of the approval, and this Agreement shall be terminated early, as of the date of Defendant's notice or the date Defendant has satisfied all monetary obligations of this Agreement, whichever is later.

35.    **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

36.    **Signatures.**  The Settling Parties' signatures to this Agreement transmitted by facsimile or electronic mail transmission shall be deemed binding.

37.    **Construction.**  The language in all parts of this Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning except as to those terms defined in the General Permit, or specifically herein.  The captions and paragraph headings used in this Agreement are for reference only and shall not affect the construction of this Agreement.

38.    **Authority to Sign.**  The undersigned are authorized to execute this Agreement on behalf of their respective Settling Party and have read, understood and agreed to all of the terms and conditions of this Agreement.

39.    **Integrated Agreement.**  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Agreement are contained herein.  The Settling Parties expressly disclaim reliance on any representations, warranties, statements or information not set forth within this Agreement.  This Agreement was made for the sole benefit of the Settling Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

40.    **Severability**: In the event that any of the provisions of this Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

41.    **Choice of Law**: This Agreement shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

42. **Full Settlement**: This Agreement constitutes a full and final settlement of this matter. Each Settling Party has freely and voluntarily entered into the Agreement with and upon advice of counsel.

43. **Effect of Agreement**: Compliance with this Agreement does not mean Defendant is per se complying with the General Permit, Clean Water Act, or any other law, rule, or regulation.

44. **Negotiated Agreement**: The Settling Parties have negotiated this Agreement, and agree that it shall not be construed against the Settling Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one Settling Party.

45. **Modification of the Agreement**: This Agreement, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Settling Parties.

46. **Assignment**: Subject only to the express restrictions contained in this Agreement, all of the rights, duties and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. No transfer of ownership or other interest in any portion of the Facility hereto owned or controlled by Defendant or otherwise associated with this Agreement, whether in compliance with the procedures of this Paragraph or otherwise, shall alter or relieve Defendant or its successors and assigns of its obligation to comply with all of the terms of this Agreement. Defendants will provide CPSA notice of any transfer within ten (10) business days of the completion of the transfer.

47. **Notices and Submissions**: Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to CSPA pursuant to this Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Lozeau Drury LLP
Attention: Rebecca Davis
1939 Harrison Street, Suite 150
Oakland, California 94612
E-mail: rebecca@lozeaudrury.com

Unless requested otherwise by Defendant, any notices or documents required or provided for by

| SETTLEMENT AGREEMENT | 17 | 3:26-cv-00097-HSG |
|---|---|---|

152934834.1 0071181-00001

this Agreement or related thereto that are to be provided to Defendant pursuant to this Agreement shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

> Mike O'Toole, CFO
> Santini Foods, Inc.
> 16505 Worthley Drive
> San Lorenzo, CA 94580
> mike@santinifoods.com

With a copy to:

> Nicole Granquist
> Jaycee Dean
> Stoel Rives LLP
> 500 Capitol Mall, Suite 1600
> Sacramento, CA 95814
> Nicole.granquist@stoel.com
> Jaycee.dean@stoel.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

48.     **Deadlines Falling on Non-Business Days.**  Any deadlines relating to this Agreement which fall on the weekend or on a federal holiday shall be extended to the following business day.

49.     **Impossibility of Performance.**  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible due to circumstances beyond the Settling Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood.  "Circumstances beyond the Settling Party's control" shall not include normal inclement weather, economic hardship, or inability to pay.  Any Settling Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The Settling Parties hereby enter into this Agreement.

SETTLEMENT AGREEMENT                         18                          3:26-cv-00097-HSG
152934834.1 0071181-00001

**APPROVED AS TO CONTENT**

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

Date: May 16 , 2026          By: _____

Chris Shutes
Executive Director, California Sportfishing Protection Alliance

SANTINI FOODS, INC.

Date: MAY 18, 2026          By: _____

Mike O'Toole, CFO

**APPROVED AS TO FORM:**

LOZEAU DRURY LLP

Dated: May 16 , 2026          By: _____

Rebecca L. Davis
Attorneys for Plaintiff

STOEL RIVES LLP

Dated: May 18 , 2026          By: *Nicole Granquist*

Nicole Granquist
Attorneys for Defendant

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Date: _____          _____

Honorable Haywood S. Gilliam, Jr.
United States Magistrate Judge

SETTLEMENT AGREEMENT                    19                    3:26-cv-00097-HSG
152934834.1 0071181-00001